IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**DAVID KELLY, JR.,**

    **Petitioner,**

v.                                  CRIMINAL ACTION NO. 2:07-cr-14(1)

**UNITED STATES OF AMERICA,**

    **Respondent.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is David Kelly, Jr.'s ("Petitioner") *pro se* Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 192 ("Pet'r's Mot."). The Government opposed the motion. ECF No. 201 ("Resp. Opp'n"). Petitioner replied. ECF No. 205 ("Reply"). This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **GRANTED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

On March 7, 2007, Petitioner and his two co-defendants ("A.S.") and ("M.S.") were named in an Eight-Count Indictment. ECF No. 21. Petitioner was charged with Counts One, Two, Seven, and Eight of the Indictment. *Id.* Count One charged Petitioner with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii). *Id.* Counts Two and Seven Charged Petitioner with Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). *Id.* Count Eight charged Petitioner with Possession with Intent to Distribute Ecstasy, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *Id.*

Before trial, the Government provided an information and notice under 21 U.S.C. § 851 to establish Petitioner's two prior drug convictions. ECF No. 121. A three-day jury trial began on May 13, 2008. *See* Docket Sheet. On May 16, 2008, a jury convicted Petitioner on all Counts. ECF No. 129. Because of his two prior drug convictions, Petitioner qualified as a "career offender." On September 22, 2008, the Court sentenced Petitioner to the mandatory life imprisonment, followed by ten years' supervised release on Count One; 120 months' imprisonment, followed by eight years' supervised release on Count Two, to run concurrently with Count One; 240 months' imprisonment, followed by eight years' supervised release on Count Seven, to run concurrently to Count One; and 360 months' imprisonment, followed by six years' supervised release on Count Eight, to run concurrently to Count One. ECF No. 146.

Petitioner appealed, and the United States Court of Appeals for the Fourth Circuit "(Fourth Circuit") affirmed the conviction on January 28, 2010. ECF No. 186. On October 3, 2024, Petitioner filed a *pro se* Motion for Compassionate Release. ECF No. 192. On October 8, 2024, the Court directed the Clerk of this Court to appoint the Federal Public Defender. ECF No. 193. The Court then granted counsel's motion to withdraw after Petitioner "had the team at USP Big Sandy call defense counsel to decline representation" and discharged counsel. ECF Nos. 199, 196 at ¶ 4.

According to the Presentence Investigation Report ("PSR"), Petitioner and his co-defendants conspired with each other to possess with into to distribute and distribute narcotics. PSR ¶ 6. In September 2000, an unindicted co-conspirator approached M.S. to introduce them to Petitioner to purchase cocaine. *Id.* ¶ 12. From mid-2002 to mid-2003, another unindicted co-conspirator brokered cocaine transactions between Petitioner and another individual. *Id.* ¶ 13. On October 6, 2002, a traffic stop led to the seizure of 3.77 grams of crack cocaine. *Id.* ¶ 16. In late

2

2002, Petitioner met with another unindicted co-conspirator to purchase two kilograms of cocaine for M.S. *Id.* ¶ 17. This unindicted co-conspirator and Defendant also cooked two kilograms of crack cocaine at a residence in December 2003. *Id.* ¶ 23. From January 2004 to August 2004, Petitioner sold yet another unindicted co-conspirator two kilograms of cocaine each month for seven months and was attributed with fourteen kilograms of cocaine. *Id.* ¶ 24. Defendant was ultimately responsible for 228 kilograms of cocaine 2.1 kilograms of cocaine base, and 271.4 grams of ecstasy. *Id.* Worksheet A.

The PSR assessed Petitioner with a total offense level of 38 and a criminal history category of VI. *Id.* ¶¶ 89–90. Petitioner's restricted Guideline was mandatory life imprisonment on Count 1. *Id.* ¶ 91. There is no evidence of psychological or psychiatric treatment. *Id.* ¶ 65. Petitioner has no known alcohol abuse problems. *See id.* ¶ 66. Petitioner is incarcerated at USP Big Sandy.[1]

## II. LEGAL STANDARD

### A. The Threshold Requirement Standard

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies.").

---

[1] *See* Federal Bureau of Prisons, "Find an Inmate," *BOP.gov*, https://www.bop.gov/inmateloc/ (last visited May 30, 2025).

In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the First Step Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" is defined by the United States Sentencing Commission ("Sentencing Commission") in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13. Yet after the First Step Act amended § 3582(c)(1)(A) to allow defendants to petition the district court directly without clearance from the BOP, U.S.S.G. § 1B1.13 became advisory and nonbinding on courts' application of § 3582(c)(1)(A) because § 1B1.13 was no longer an "applicable" Sentencing Commission policy statement. *See United States v. McCoy*, 981 F.3d 271, 276, 283 (4th Cir. 2020). Courts were thus "empowered to consider *any* extraordinary and compelling reason for release

4

that a defendant might raise." *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). The most recent amendments to the Sentencing Guidelines went into effect on November 1, 2023, and U.S.S.G. § 1B1.13 now contemplates that a defendant may file a motion for compassionate release directly with the district court. *See* U.S.S.G. § 1B1.13(a) (2023). Therefore, § 1B1.13 is now an "applicable" policy statement under § 3582(c)(1)(A), and the Court must ensure that a sentence reduction granted under § 3582(c)(1)(A) is "consistent with" that Guideline. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Brown*, 706 F. Supp. 3d 516 (D. Md. 2023).

Section 1B1.13(b) identifies five broad categories by which defendants may demonstrate extraordinary and compelling reasons to reduce a sentence: (b)(1) medical circumstances; (b)(2) the defendant's age; (b)(3) family circumstances; (b)(4) whether the defendant was a victim of abuse; (b)(5) other reasons (catch-all provision);[2] and (b)(6) whether the defendant received an unusually long sentence. § 1B1.13(b)(1)–(6). Therefore, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, when evaluating whether extraordinary and compelling circumstances exist to modify a sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Threshold Requirement

Petitioner has satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp'n at 5–6. On June 17, 2024, Petitioner submitted a letter requesting Compassionate Release to the Warden. Pet'r's Mot. at Ex. A, ECF No. 192-1. The Warden has not responded to Petitioner's request for more than 30 days. Thus, Petitioner has met the threshold requirement.

---

[2] This catch-all provision allows courts to continue to exercise discretion in considering "any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284; *see Brown*, 2023 WL 8653179, at *2 ("This catchall maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release.").

## B. Petitioner's Compassionate Release Request

Next, the Court addresses whether Petitioner has set forth extraordinary and compelling reasons to reduce his sentence. For the reasons stated below, Petitioner has presented an extraordinary and compelling reason to modify his sentence, and the relevant § 3553(a) factors support relief.

### i. Extraordinary and Compelling Reasons

Petitioner asserts four grounds for relief: (1) a change in law that has created a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; (2) the danger associated with the COVID-19 pandemic; (3) harsh prison conditions; and (4) Petitioner's mental health issues. Pet'r's Mot. at 5–22. The Court will address each issue in turn. For the reasons discussed below, a change in law presents an extraordinary and compelling reason to modify Petitioner's sentence.

#### a. Change in Law

Before the November 2023 Guideline amendments, courts were authorized to consider the length of a petitioner's sentence when determining whether extraordinary and compelling circumstances exist to warrant compassionate release. *See McCoy*, 981 F.3d at 285, 288. Under U.S.S.G. § 1B1.13(b)(6), a petitioner can prevail on a compassionate release motion where he has served at least 10 years of his term of imprisonment showing he "received an unusually long sentence" and that a "change in the law . . . produce[d] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6).

Petitioner argues that he would not face the same mandatory minimum if he were sentenced today. Pet'r's Mot. at 8. He argues that because the First Step Act modified the mandatory

minimum sentences for "career offenders," the mandatory minimum sentence would not be life. *Id.* He argues that this is an extraordinary and compelling reason to reduce his sentence. *Id.* at 34.

The Government argues that the change in law Petitioner presents is neither extraordinary nor compelling. Resp. Opp'n at 10. The Government argues that the phrase "extraordinary and compelling," when considered considering the statute's purpose and structure, does not include nonretroactive or intervening changes in law. *Id.* The Government further argues that a sentence is not unusually long where it is dictated by the statutory minimum. *Id.* at 21. The Government contends that there is no gross disparity where the guideline range captures a defendant's sentence. *Id.* The Government avers that a sentence at the high end of the guideline range is fully supported today.[3] For the following reasons, the Court rejects these arguments.

Petitioner satisfies the threshold requirement of Subsection (b)(6). Petitioner has served over 16 years on his life sentence. He thus qualifies for relief under this Section.

The Court next considers the Government's position that a nonretroactive, intervening changes in the law cannot serve as extraordinary and compelling reasons. The First Step Act requires district courts to consider intervening changes when parties raise them. *United States v. Davis*, 99 F.4th 647, 657 (4th Cir. 2024) (citing *Concepcion v. United States*, 597 U.S. at 487). Nonretroactive changes in law are relevant as potential extraordinary and compelling reasons for sentence reductions. *Id.* at 658. That is because, as the Fourth Circuit has stated, "the very purpose

---

[3] The Government also presents several arguments before reaching the change in law Petitioner raises. First, the Government argues that the Sentencing Commission exceeded its authority in promulgating Section 1B1.13(b)(6). Resp. Opp'n at 9. They argue that Subsection (b)(6) conflicts with § 3582(c)(1)(A)'s text and purpose. *Id.* at 10. The Government also argues that Subsection (b)(6) violates separation-of-powers principles. *Id.* at 18. The Government contends that Subsection (b)(6) is thus invalid. *Id.* at 20. The Court has considered these arguments and finds each of them unpersuasive. Congress instructed the courts to make their findings "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). This is an express delegation, and the Government concedes as much. Resp. Opp'n at 9 n.3. "This language 'expressly cabin[s] district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements." *United States v. Bricker*, 135 F.4th 427, 455 (6th Cir. 2025) (Stranch, J., dissenting) (quoting *Concepcion v. United States*, 597 U.S. 481, 495 (2022)). This express delegation makes USSG § 1B1.13(b)(6) valid.

of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions where there is not a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction." *Id.* at 657. (quoting *McCoy*, 981 F.3d at 287). The law in this Circuit (and others) is clear—the change in law Petitioner presents can be extraordinary and compelling. *See, e.g., United States v. Chen* 48 F.4th 1092, 1098 (9th Cir. 2022); *see also United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022).

The Court concludes that Petitioner's original sentence is unusually long. The Government argues that "a sentence is not 'unusually long' where, as here, it is dictated by a statutory minimum." Resp. Opp'n at 21. But that does not make a life sentence any more common.[4] And as the Court discusses further below, Petitioner would not be subject to the same statutory minimum today. Given the rarity of life sentences, the Court finds that Petitioner's sentence was unusually long.

The intervening change in law has created a gross disparity between Petitioner's sentence and the one he would likely serve is sentenced today. In other words, Congress views this sentence as "dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 286. The Sentencing Guidelines do not define the term "gross disparity." Black's Law Dictionary defines "gross" as "[c]onspicuous by reason of size or other attention-getting qualities," or "obvious by reason of magnitude." *Gross*, BLACK'S LAW DICTIONARY (12th ed. 2024). And the dictionary definition of "gross" is "glaringly noticeable usually because of inexcusable badness or objectionableness."[5] The Court concludes that the disparity "between a life sentence and any sentence less than life is

---

[4] Indeed, life sentences are exceedingly rare. Sentences of life imprisonment account for "less than 1% of the federal sentencing caseload." U.S. SENT'G COMM'N, *Life Sentences in the Federal System* (2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Life.pdf (last visited May 28, 2025).

[5] *Gross*, MERRIAM WEBSTER (2025), https://www.merriam-webster.com/dictionary/gross (last visited May 29, 2025).

8

glaringly noticeable." *United States v. Allen*, 717 F. Supp. 3d 1308, 1316 (N.D. Ga. 2024).

The Government argues that there can be no gross disparity where the Guideline range captures Petitioner's current sentence. Resp. Opp'n at 21. But this is wrong because an extraordinary and compelling reason for relief exists where the change in law creates "a gross disparity between the sentence being served and the sentence ***likely*** to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6) (emphasis added). To be sure, it is *possible* that Petitioner would be sentenced to life in prison if he were sentenced today. But it is not *likely*. As the Court details below, factors like Petitioner's role in the offense and the characteristics of the offense make it much less likely that he would be sentenced to life imprisonment today.

A sentencing disparity alone is insufficient. *United States v. Moody*, 115 F.4th 304, 312 (4th Cir. 2024) (citing *McCoy*, 981 F.3d at 286). In reducing Petitioner's sentence, the Court must also make an "individualized assessment[] of [Petitioner's] sentence" and "give full consideration [to] [Petitioner's] individual circumstances." *Id.* As discussed further below, Petitioner's individual circumstances, including his criminal history, risk of recidivism, and offense conduct would likely result in a different sentence today.

Petitioner has served over 10 years in prison, had an unusually long sentence, and a change in law created a gross disparity between his sentence and the sentence he would receive today. He has thus presented an extraordinary and compelling reason to modify his sentence.

### b. COVID-19 Pandemic

Petitioner argues that the COVID-19 pandemic constitutes an extraordinary and compelling reason to reduce his sentence. Pet'r's Mot. at 20. He argues that "[l]ong-standing deficiencies in BOP's healthcare services, insufficient quarantine space, no requirement for staff to take COVID-19 tests, inability for inmates to social distance, and the fact that only 51% of BOP

staff have accepted vaccination have contributed to the spread and lethality of COVID-19 in prisons." *Id.* at 21.

Petitioner has not proven that COVID-19 is an extraordinary and compelling reason for his compassionate release. When a petitioner seeks relief under this theory, courts have required them to demonstrate "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Reams*, 847 F. App'x 199, 199 (4th Cir. 2021) (citing *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)).

Petitioner relies on the BOP's deficient healthcare services and the dangers to prisoners associated with those shortcomings as a ground for relief. Pet'r's Mot. at 20–21. This is insufficient. Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Feiling*, 453 F. Supp. 3d at 841 (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Petitioner has neither demonstrated that he is particularly susceptible to the virus, nor has he established that there is a particularized risk of contracting the disease at USP Big Sandy. Accordingly, this argument is unavailing.

### c. Harsh Prison Conditions

Next, Petitioner argues that the living conditions in the wake of the COVID-19 pandemic is an extraordinary and compelling reason to modify his sentence. Pet'r's Mot. at 21. Petitioner argues that the "onerous lockdowns and restrictions imposed" in the BOP made his sentence "harsher and more punitive than would otherwise have been the case." *Id.* at 22.

Petitioner's purported hardships do not constitute extraordinary and compelling reasons for compassionate release. The pandemic has undoubtedly made the conditions of imprisonment more difficult, but "harsh conditions in a BOP facility alone do not create an extraordinary and

compelling reason for release." *United States v. Ogun*, 657 F. Supp. 3d 798, 810 (E.D. Va. 2023). Every inmate must deal with these conditions in response to COVID-19. *Id.* Conditions that "generally apply to every prisoner within a given facility and are neither unique to [Petitioner] nor extraordinary in the broader context of the global pandemic" do not warrant compassionate release. *United States v. Fuentes*, 2022 WL 3581392, at *7 (E.D. Va. Aug. 19, 2022).

Further, the latest available data on COVID-19 infections at USP Big Sandy does not support Petitioner's contention. According to the Federal Bureau of Prisons, Big Sandy has zero open cases and zero COVID-related deaths.[6] Thus, Petitioner has failed to establish that prison conditions present extraordinary and compelling reasons for his compassionate release.

### d. Petitioner's Mental Health

Petitioner next argues that the mental health issues he has developed while in prison are extraordinary and compelling reasons for his release. Pet'r's Mot. at 22. Not so. To be an extraordinary and compelling reason, Petitioner must prove that his medical conditions "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Petitioner gives little detail about his mental health concerns. But there is nothing in the record to suggest that BOP is not managing his health needs. There is no sufficient basis for compassionate release where a petitioner receives "comprehensive care" and has the "ability to care for himself in prison." *United States v. Freeman*, 617 F. Supp. 3d 386, 397 (E.D. Va. 2022), *aff'd* 2023 WL 4797316 (4th Cir. July 27, 2023). Therefore, Petitioner's mental health issues do not serve as extraordinary and compelling reasons to modify his sentence.

---

[6] *See* Federal Bureau of Prisons, "Inmate COVID-19 Data," *BOP.gov*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited June 10, 2025).

11

### ii. 3553(a) Factors

Having determined that Petitioner has demonstrated an extraordinary and compelling reason to reduce his sentence, the Court turns to the relevant § 3553(a) factors. A district court must consider the applicable § 3553(a) sentencing factors in deciding whether to exercise its discretion to reduce a defendant's term of imprisonment. *United States v. Bond*, 56 F. 4th 381, 384 (4th Cir. 2023).

Petitioner argues that he has "made exceptional strides in bettering himself" by "completing numerous rehabilitative programs." Pet'r's Mot. at 7. He argues that he has maintained employment with excellent work reports. *Id.* Petitioner also argues that he is no longer a danger to the public. *Id.*

The Government argues that the § 3553(a) factors independently preclude relief. Resp. Opp'n at 8. The Government seems to concede that Petitioner has proven he would benefit from a change in law. *Id.* at 26 (citing *United States v. Kibble*, 992 F.3d 326, 330–32 (4th Cir. 2021)). The Government argues that Petitioner's characteristics, the nature and circumstances of the offense, deterrence and promoting respect for the law, and the Court's need to avoid unwarranted sentencing disparities do not weigh in Petitioner's favor. *Id.* at 26–27.

#### a. Petitioner's History and Characteristics

Petitioner's post-sentencing conduct "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The Government argues that because Petitioner has completed only four programs while he has been incarcerated that this is not an extraordinary and compelling reason for his release. Resp. Opp'n at 25. True, this is neither extraordinary nor compelling, but it does not stop the Court from considering his rehabilitation as it relates to the § 3553(a) factors. Petitioner has

one minor disciplinary infraction from 16 years ago. Compassionate Release Recommendation, ECF No. 206 at 1. The Government does not dispute that Petitioner has maintained employment and received excellent work reports. *See* Resp. Opp'n. Overall, Petitioner's minor disciplinary record, paired with his educational and employment record, weigh slightly in Petitioner's favor.

Petitioner is also subject to ten years of supervised release when he is released. If Petitioner's criminal behavior persists, as the Government argues it will, the Court can revoke his supervised release. This fact mitigates the Court's concerns of recidivism because it serves as an incentive to follow the conditions of supervised release. *See* 18 U.S.C. § 3553(a)(2)(B)–(C). It also promotes deterrence and respect for the law.

### b. Deterrence

Petitioner has served approximately 200 months of his sentence as of the date of this Memorandum Opinion and Order. Sentencing Petitioner to a term of imprisonment that is longer than his co-defendants deters both Petitioner and others from committing serious offenses in the future. Sentencing Petitioner beyond the new mandatory minimum accomplishes the same. A life sentence is greater than necessary to deter Petitioner and others. The Court is confident that a sentence of 360 months is sufficient, but not greater than necessary, to afford adequate deterrence. *See* § 3553(a)(2)(B).

### c. Seriousness of the Offense, respect for the law, and just punishment

Petitioner's conduct is undoubtedly serious. He engaged in a six-year long conspiracy to distribute and possess with intent to distribute cocaine, cocaine base, and ecstasy in the Eastern District of Virginia and elsewhere. PSR ¶¶ 9, 33, 34. This was not his first offense either. Indeed, he received the § 851 enhancement because of his prior drug convictions. But Petitioner was not an organizer, manager, supervisor, or leader, and there is no weapon connected with the instant

offense. *Id.* ¶ 34.[7] Considering the change in law that he benefits from, which still results in a lengthy sentence, the Court is satisfied that 360 months' imprisonment reflects the seriousness of the offense. *See* § 3553(a)(2)(A). This sentence provides just punishment and promotes respect for the law. *Id.* Further, as discussed above, Petitioner's term of supervised release reflects the need to monitor Petitioner to ensure he is no longer a threat to the community. *See* § 3553(a)(2)(C).

### d. Unwarranted Sentencing Disparities

The Court further recognizes the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). True, Petitioner and his co-defendants were not similarly situated. But, as the Court discussed above, other defendants with similar records who have been found guilty of similar conduct will likely serve vastly different sentences when sentenced today. That is fundamentally unfair. *See United States v. Bricker*, 135 F.4th 427, 430 (6th Cir. 2025) (noting "the unfairness" that results when "old inmates are serving prison sentences that are much longer than the sentences of new inmates who committed the exact same crimes."). Thus, "a sentence reduction is necessary to mitigate the gross disparity between [Petitioner] and similarly situated defendants." *United States v. Brown*, 78 F.4th 122, 132 (4th Cir. 2023).

The Court concludes that the relevant § 3553(a) factors support modifying Petitioner's sentence, but not to time served, as Petitioner requests. Petitioner's criminal history and the seriousness of the offense warrant a significant sentence. But a life sentence is excessive. Given Petitioner's characteristics, the seriousness of the offense, the need for deterrence, providing just punishment, and avoiding unwarranted sentencing disparities, the Court finds it appropriate to reduce Petitioner's sentence to a total of 360 months. This sentence is sufficient, but not greater

---

[7] This underscores the Court's position here that a life sentence, when not required by law, is excessive. Indeed, "[n]early one-third (31.4%)" of offenders sentenced to life were organizers, leaders, managers, or supervisors. U.S. SENT'G COMM'N, *supra* note 3, at 10. And "[a]lmost half (47.5%)" sentenced to life "possessed a weapon in connection with their offense or were convicted under 18 U.S.C. § 924(c)." *Id.*

14

than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553(a).

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's Motion for Compassionate Release is **GRANTED**. ECF No. 192. The Court now imposes a sentence of **THREE HUNDRED SIXTY (360) MONTHS'** imprisonment, followed by **TEN (10) YEARS** of supervised release on Count One; **ONE HUNDRED TWENTY (120) MONTHS'** imprisonment, followed by **EIGHT (8) YEARS** of supervised release on Count Two, to run concurrently with Count One; **TWO HUNDRED FORTY (240) MONTHS'** imprisonment, followed by **EIGHT (8) YEARS** of supervised release on Count Seven, to run concurrently to Count One; and **THREE HUNDRED SIXTY (360) MONTHS'** imprisonment, followed by **SIX (6) YEARS** of supervised release on Count Eight, to run concurrently to Count One.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
June 10, 2025

Raymond A. Jackson
United States District Judge